FILED

IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.

★ AUG 2 1 2006 ★

BROOKLYN OFFICE

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

_____

UNITED STATES OF AMERICA,     )        No. 06-CR-135 (JBW)
                              )
v.                                 )
                              )
Abdellatif NOUIRA, Mustapha HAMDI,   )        MEMORANDUM & ORDER
Hafida KHIR, Mourad NOUIRA, Kamal   )
NOUIRA, and Malika NOUIRA,         )
                              )
                Defendants.     )

_____

JACK B. WEINSTEIN, United States Senior District Judge:

## I.    Introduction

Defendants are accused of conspiring to fraudulently obtain green cards by arranging

sham marriages for defendants Hafida Khir, Abdellatif Nouira, Malika Nouira, Kamal Nouira,

and Mourad Nouira, all citizens of Morocco, to other Moroccan citizens who had been chosen to

obtain legal green cards via the annual United States "diversity lottery." Defendant Mustapha

Hamdi, who worked at the United States Consulate in Morocco, and defendant Abdellatif Nouira

are alleged to have led the conspiracy. The indictment charges conspiracy to fraudulently obtain

resident visas, use of fraudulent visas, fraudulent procurement of citizenship, and witness

intimidation.

The government seeks to admit documents it calls, collectively, a "Certificate of Non-

Existence," purporting to prove that several alleged Moroccan marriage contracts produced by

defendants in support of their visa applications were in fact not filed with the Moroccan

government in the place where the contracts indicates they had been filed. The Certificate of



Non-Existence was produced by the Moroccan government upon request by the American Consulate General, acting as an intermediary on behalf of the government.

It is the government's claim that it notified defendants on July 12, 2006 that it was seeking this information from the Moroccan government. *See* Government's Response in Opposition to Reconsideration, August 3, 2006, 6:3. The documents supplied by the Moroccan government are dated July 24, 2006. At the time of the evidentiary hearing before the court on July 31, 2006, the documents had yet to be translated, but a translation must have been made available to all parties soon thereafter, since defendants' Motion for Reconsideration, which includes excerpts from the translation, was submitted to the court on August 1, 2006.

This motion raises two issues: (1) whether the jury should be allowed to make the assumption that the documents that purport to be Moroccan marriage certificates are, in fact, documents of the kind typically filed in Morocco to record a legal marriage; and (2) whether the government's Certificate of Non-Existence is admissible under the Federal Rules of Evidence.

## II.     Admissibility of the Purported Moroccan Marriage Certificates

At the core of this motion are the purported marriage documents submitted to United States federal authorities in support of defendants' allegedly fraudulent applications for visas. A determination of their admissibility, and of what they may be admitted to prove, is an essential step in determining the relevance and probative value of the Certificate of Non-Existence presented by the government.

## A. Relevance

The first issue is one of relevancy under Rule 401 of the Federal Rules of Evidence. If the government can establish, through the testimony of a witness knowledgeable about Moroccan marriage practices, that the documents in question mimic the standard format for marriage documents in Morocco, then evidence of the nonexistence of such marriage records in the appointed place is evidence in support of the nonexistence of the marriage. If the government cannot prove that the documents submitted by the defendants do, in fact, purport to be marriage documents, the admissibility of the Certificate of Non-Existence is not relevant to the question of whether the marriages at the center of this case are valid or fraudulent. But, it would tend to prove that the defendants submitted documents to the United States government in support of their visa applications that were untrue in their indication of official filing in Moroccan government archives when they were not in fact so filed.

## B. Admissibility of Written Transcripts

Objection on hearsay grounds to written translation submitted without supporting testimony from the translator is generally disposed of in this circuit by a holding that the translator is merely a "conduit" to permit the original language message to reach the English-speaking jury. *See, e.g., United States v. Koskerides*, 877 F.2d 1129 (2d Cir. 1989) ("The interpreter was no more than a language conduit and therefore his translation did not create an additional layer of hearsay."). The authenticity of written translations, like that of any documentary evidence, is "satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a). The fact that defendants have had

3

an opportunity to challenge the accuracy of the translation and have not done so permits the English translation to be used.

### III.    Admissibility of the Certificate of Non-Existence

#### A.    Hearsay

Federal Rule of Evidence 803(10) explicitly contemplates the potential admissibility of evidence tending to prove the nonexistence of documentary evidence. In order to prove "the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency," a party may supply "evidence in the form of a certification in accordance with rule 902, or testimony, that diligent search failed to disclose the record, report, statement, or data compilation, or entry." Fed. R. Evid. 803(10).

The reference in Rule 803(10) to "certification in accordance with rule 902" invokes the process by which "foreign public documents" may be found to be authentic even without "extrinsic evidence of authenticity." Fed. R. Evid. 902. Though Rule 902 enumerates more than one way in which written evidence may be "self-authenticated," the process specifically referenced by Rule 803(10) is that of "final certification," whereby "[a] document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position . . . of the executing or attesting person" may be authenticated by "a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country

4

assigned or accredited to the United States." *Id.*

The government offers, by way of "final certification," the signature and seal of a Mr. Bandaoud, an "Authentication Judge at the Court of First Instance in Casablanca." *See* Government's Response in Opposition to Reconsideration, August 3, 2006, 4:1. The government does not claim that Mr. Bandaoud is "a secretary of an embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States" as required for final certification under Rule 902(3).

The government contends that the American Consulate General vouched for the authenticity of the document by acting as an intermediary, communicating with the Moroccan government on its behalf, making the initial inquiry of the Moroccan Ministry of Justice, receiving the "Certificate of Non-Existence," and delivering the certificate to the government. *See* Government's Response in Opposition to Reconsideration, August 3, 2006, 1:2. This argument is not persuasive.

The government has not produced a statement of "final certification" from the American Consulate General in Morocco, attesting to the authenticity of the proffered "Certificate of Non-Existence" or to the "genuineness of the signature and official position" of Mr. Bandoud or the certificate's author, Dr. Al-Mustafa Nai'im. In the August 7, 2006 hearing on defendants' Motion for Reconsideration of this issue, the government informed the court that it would be unable to produce such a certificate. It has not explained to the court's satisfaction why a representative of the United States in Morocco cannot provide a certificate with respect to the signatures of the Moroccan officials authenticating the Certificate of Non-Existence.

5

Alternatively, it has not explained why a representative of the Moroccan consulate in the United States cannot supply such a final certification.

Without "final certification," the government's evidence of nonexistence does not meet the criteria set forth in the Rule 803(10) exception. It is therefore inadmissible under that rule.

The government stated in the August 7, 2006 hearing that it planned to call a witness, Mr. Abdelkebir Snafi, an employee of the United States Consulate in Casablanca, to testify that he himself went to the court of first instance in Casablanca, searched through the records, and was unable to find the marriage record where defendants' documents state they should be. At trial, that witness was permitted to testify regarding his search through the Moroccan records and his observation that the documents were not where they were expected to be. He was cross-examined by the defendants. His credibility as a witness will be determined by the jury. This evidence is admissible as proof that the documents were not filed where the documents—and defendants who attached them to their applications for visas—asserted that they were filed.

Defendants were offered funding under the Criminal Justice Act to retain an investigator in Morocco to try to find the documents in the place they should have been if they were filed. Defendants have taken no steps to retain such an investigator. The government has furnished information "sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

### B.    Prejudice

Rule 403 of the Rules of Evidence governs the determination of whether to admit evidence whose probative value, while relevant, "is substantially outweighed by the danger of

6

unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. This decision "is a matter generally left within the wide, and wise, discretion of the trial court." *United States v. Robinson*, 544 F.2d 611, 616 (2d Cir. 1976).

Any inquiry into the nonexistence of a document is by its nature "a step removed from any element of the offense charged," because rather than being "a statement that the defendant has failed to perform a given act or that he does not enjoy a certain status," it is merely "a statement that, among the records regularly kept by a public office or agency, a certain record, entry, report, etc., has not been found." *See United States v. Yakobov*, 712 F.2d 20, 26 (2d Cir. 1983).

In this case, documents attesting to the existence or nonexistence of the marriage records might, as already noted, serve two purposes: (1) to speak to the validity of the marriages on which the entrance visas at the root of this case are based, and (2) to speak to the veracity of a statement made by defendants as to the validity of official documents, or the validity of the documents themselves. If the government succeeds in establishing that the documents submitted by the defendants in support of their visa applications do in fact purport to be marriage certificates, the inquiry into the admissibility of the Certificate of Non-Existence bears on both questions. If, however, the government cannot establish that the documents submitted by the defendants purport to be marriage licenses, the probative value served by admission of the Certificate of Non-Existence is to show the dishonesty of the defendants in submitting a fraudulent document to obtain a visa, and not the validity of the marriages themselves.

7

Under either theory the documents have substantial probative force. Prejudice is minimal. Rule 403 is not a basis for exclusion.

### C.     Trial Testimony

After the parties were informed of the conclusions described above, an American embassy employee and former Moroccan government official testified to marriage customs, as well as methods of filing proof of marriage documents and their form. The court, for reasons stated orally on the record, ruled his testimony admissible under rule 401, 701, 702, and 703 of the Federal Rules of Evidence. If believed, his testimony would suffice to permit the jury to conclude that the documents purported to be marriage documents, that they were never filed properly, and that they falsely stated that they were filed.

## IV.     Conclusion

The Certificate of Non-Existence is inadmissible. The purported marriage contracts are admissible for all purposes.

SO ORDERED.

_____
Jack B. Weinstein
United States Senior District Judge

Dated: August 16, 2006
         Brooklyn, New York